IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2005 OCT 12  P 4:34

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. ____2:05CR250-T____ |
| | ) | |
| v. | ) | [18 U.S.C. § 1001(a)] |
| | ) | |
| GORMAN & ASSOCIATES, L.L.C. | ) | **INFORMATION** |

The United States Attorney for the Middle District of Alabama charges:

## COUNT 1

1. At all times relevant to this Information, the Appalachian Regional Commission ("ARC") was established by the Congress of the United States of America in 1965 to support economic and social development in the Appalachian Region, which includes thirty-seven counties in the State of Alabama.

2. At all times relevant to this Information, ARC's Office of Inspector General ("ARC-OIG") was established pursuant to the Inspector General Act of 1978, Title 5, United States Code, Appendix 3 (the "IGA Act"). The IGA Act authorizes ARC-OIG, among other things, to conduct audits and investigations relating to ARC's programs and operations.

3. On or about October 18, 1999, Auburn University-Montgomery ("AUM") submitted a grant proposal to ARC to establish the Appalachian Alabama Mentoring Entrepreneurial Network for Women ("AMEN"). AUM revised its grant proposal to ARC for AMEN on or about December 16, 1999, and March 13, 2000, respectively. According to the grant proposal, AMEN's objective was to facilitate the transition of fifteen (15) women currently on welfare to entrepreneurial work in the Alabama Appalachian Region.

4. On or about March 29, 2000, ARC approved the AMEN grant proposal, as project number AL-13495-EI-302, and awarded AUM a grant of ARC funds in the amount of $142,945.

In addition to the ARC funds, non-federal sources were to contribute $35,500 to AMEN for a total project cost of $177,870.

5.   On or about June 1, 2000, AUM and GORMAN & ASSOCIATES, L.L.C. ("GORMAN LLC"), located in Montgomery, Alabama, entered into a Professional Services Agreement in relation to the AMEN project.

6.   On or about October 5, 2000, ARC informed AUM that ARC would audit the AMEN project, including all expenditures and cost reports relating to such project.

7.   The AMEN project officially ended on or about December 31, 2001.

8.   On or about February 26-27, 2002, Dottie Cupp, at the time a full-time auditor for ARC-OIG, commenced an audit of the AMEN project at AUM in Montgomery, Alabama.

9.   On or about February 27, 2002, Cupp concluded based on her initial review of the AMEN project records that 100% of the costs related to the agreement between AUM and GORMAN LLC would have to be further documented and reviewed.

10.   On or about July 12, 2002, ARC-OIG authorized Special Agent Marvin Weindorff and other staff, as necessary, of the United States Department of Education Office of Inspector General, to make necessary inquiries and act on behalf ARC-OIG with regard to ascertaining compliance with laws and regulations applicable to grants issued by ARC, including the AMEN grant.

11.   As part of the AMEN audit, Cupp, with the assistance of Weindorff, requested that GORMAN LLC provide further documentation on the services it performed, and expenditures it made during the AMEN project.

12.   On or about August 23, 2002, in response to a request for information sent by Weindorff, GORMAN LLC sent to Weindorff a letter falsely representing that (1) GORMAN LLC's expenses for the AMEN project included $8,630 for the salary of Joe Veres, and (2) Joe Veres' work on the AMEN project included set up and reporting. In fact, as GORMAN LLC then knew, Joe Veres did virtually no work on the AMEN project.

13.   On or about September 13, 2002, GORMAN LLC sent via Federal Express to Weindorff documents falsely representing that (1) Joe Veres worked on the AMEN project for GORMAN LLC during seven pay periods from approximately August 4, 2000 through October 25, 2000, (2) the work Joe Veres performed for the AMEN project included initial implementation of the program, assistance in compiling and preparing quarterly reporting, discussions with AUM, dissemination of information, and supported transition from John Veres to Darla Graves as program manager, (3) Joe Veres expended a great deal more time in servicing the AMEN project than from August 4, 2000, until October 25, 2000, but the amount of compensation being charged to the AMEN project was only for that time period, and (4) GORMAN LLC's expenses for the AMEN project included $8,665.60 for the salary of Joe Veres, representing 50% of his salary for six of the seven pay periods, and 20% for one of the seven periods. In fact, as GORMAN LLC then knew, Joe Veres did virtually no work on the AMEN project.

14.   On or about November 6, 2002, GORMAN LLC faxed to Weindorff a memorandum dated November 5, 2002 falsely representing that the work Joe Veres performed for the AMEN project included liaison activities among AUM, GORMAN LLC, and ARC, including contract execution, program development, logistics of meetings, and program coordination and assisting in

collecting information on available computer equipment in collaboration with AUM. In fact, as GORMAN LLC then knew, Joe Veres did virtually no work on the AMEN project.

15. On or about November 6, 2002, GORMAN LLC signed and caused to be faxed to Weindorff a letter enclosing documentation falsely representing that GORMAN LLC's expenses for the AMEN project included $8,665.60 for the salary of Joe Veres to set up AMEN and reporting. In fact, as GORMAN LLC then knew, Joe Veres did virtually no work on the AMEN project.

16. On or about the dates described above, in Montgomery County, Alabama, in the Middle District of Alabama, and elsewhere, the defendant

GORMAN & ASSOCIATES, L.L.C.

knowingly and willfully, in matters within the jurisdiction of the executive branch of the Government of the United States, made and caused to be made materially false, fictitious, and fraudulent statements and representations and made and used and caused to be made and used false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in violation of Title 18, United States Code, Section 1001(a).

LEURA GARRETT CANARY
United States Attorney

Andrew O. Schiff
Assistant United States Attorney
Deputy Chief, Criminal Division